CARTERET PROPERTIES, A CO-PARTNERSHIP OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. VARIETY DONUTS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued January 24, 1967—Decided March 27, 1967.

118

Mr. *Sam Weiss* argued the cause for appellant (*Mr. Sumner W. Weener,* attorney).

Mr. *Francis X. Journick* argued the cause for respondent (*Messrs. Wilentz, Goldman & Spitzer,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. In this action for possession of leased premises the Middlesex County District Court entered judgment for Carteret Properties, the plaintiff-landlord. The relief was based upon a finding that defendant-tenant, Variety

Donuts, Inc., had been guilty of breach of a covenant in the lease for which a right of re-entry was reserved. The Appellate Division affirmed and we granted the tenant's application for certification. 48 *N. J.* 353 (1966).

On October 31, 1958, Variety and Carteret Shopping Center, Inc. entered into a five-year lease covering a store in a shopping center in Carteret, New Jersey. The premises were to be used only "for the retail sale of donuts, coffee, and the incidental sale of cold sandwiches, together with juices, soft drinks, pre-packaged ice cream [and] machine vended cigarettes." The lease provided that "if default be made in the performance of any of the covenants" the landlord reserved the right to re-enter and repossess the store. Thereafter, on March 5, 1963, a second lease for five years from April 1, 1963 was made between Variety and Office Buildings of America, Inc., a successor in title of the shopping center. This lease provided that the store would be used only "for the retail sale of food and allied products." A rider attached said:

"c. The tenant shall have the sole right and option to operate his business *as heretofore* and no other lease agreement with any other tenant may be entered into encompassing the same operating powers. * * * The tenant is hereby permitted to install and utilize any and all equipment for the purpose of preparing and serving hot meals; shall be allowed and permitted to display and sell newspapers and nickel candy; display and sell any and all types of bakery goods; subject to existing leases; install additional dining tables; install and operate a soda and ice cream fountain.

d. In the event business conditions in the opinion of the tenant requires [*sic*] a change in the character of the aforesaid business, then and in that event, the tenant shall have the right to change the character of his business with due notice being served upon the landlord, subject to the consent of the landlord, which shall not be unreasonably withheld." (Emphasis added)

The right of re-entry for breach of covenants was continued.

On August 17, 1964 the lease was assigned to the plaintiff as new owner of the shopping center by Robert Cronheim, Receiver of Carteret Center Associates, successor in title to Office Buildings of America, Inc.

The parties agreed in writing after this suit was started that since about October 20, 1959 Variety has continuously sold in its store to its patrons and to members of the public bus transportation tickets of the Public Service Co-ordinated Transport Co. The dispossess action was tried on this written stipulation, copies of the leases and assignment of the current one; no testimony was submitted. There is nothing in the stipulation indicating whether the sale of the bus tickets was simply a *de minimis* incident of defendant's business, or constituted a substantial activity. It is plain from the tenor of the stipulation and from the oral argument before us that the various landlords, including plaintiff, were aware of the practice, and continued to accept the monthly rent from defendant to and including that payable on November 1, 1965 for the month of November.

On November 6, 1965 plaintiff gave written notice to defendant that it had violated the lease, that the occupancy was terminated "for the reason that you have committed a breach of that covenant in your lease providing that the store premises aforesaid are 'to be used and occupied only for the retail sale of food and allied products,' for which breach a right of re-entry is reserved to the landlord." Removal from the premises was demanded within five days after receipt of the notice.

In the trial court defendant argued principally that when the second and existing lease was negotiated and its terms agreed upon, the then landlord knew of the sale of bus tickets, did not regard it as a breach of the expiring lease, and consented to the continuance of the practice. That understanding, Variety asserted, was one reason why the March 5, 1963 lease contained the addendum reciting, among other things, that "the tenant shall have the sole right and option to operate his business *as heretofore* * * *." Additionally, defendant contended that even if the sale of tickets could be considered a use covenant violation, plaintiff had waived it. In this connection Variety claimed

(and the argument seems to encompass equitable estoppel as well as waiver) that such additional agreement as to use was binding on plaintiff by virtue of the revised lease, and also because inquiry by plaintiff before its purchase was consummated would have revealed the full nature of the agreement as to use under which defendant was occupying the premises. The contentions were rejected and judgment granting possession to plaintiff was entered.

This action for possession of the leased premises is a summary statutory proceeding based upon *N. J. S.* 2A:18–53 to –57. *Section* 53 provides that an order for possession may be entered by the appropriate county district court where a lessee "shall commit any breach or violation of any of the covenants * * * contained in the lease for the premises where a right of re-entry is reserved in the lease for a violation of such covenants * * *, and shall hold over and continue in possession of the demised premises * * * after the landlord or his agent for that purpose has caused a written notice of the termination of said tenancy to be served upon said tenant, and a demand that said tenant remove from said premises within 3 days from the service of such notice." The notice is required to "specify the cause of the termination of the tenancy," and proof that such notice has been served is prerequisite to judgment. *N. J. S.* 2A:18–56. The cause of termination is jurisdictional, and if at trial evidence is adduced from which a finding could reasonably be made that a proper notice was served and that the specified statutory cause existed, a judgment for possession is conclusive. *Vineland Shopping Center, Inc. v. De Marco,* 35 *N. J.* 459, 462–464 (1961); 18 *N. J. Practice* § 1568 (*Fulop-Kain, District and Municipal Courts*) (*Supp.* 1965).

Since jurisdiction of the district court to apply the stern remedy of dispossession stems from the statute, courts have always demanded strict compliance with its terms and conditions. Departures therefrom invariably result in dismissal of the action. The burden of showing compliance and

proving the alleged breach of lease covenant rests heavily upon the landlord. And as *Vineland* dictates, the tenant may not only offer evidence contesting the alleged breach of covenant, but he may also present proof of equitable defenses thereto. 35 *N. J.,* at *pp.* 468, 469; 18 *N. J. Practice* § 1569 (*Tulop-Kain, District and Municipal Courts*) (*Supp.* 1965).

■ These observations bring us to a consideration of the sufficiency of the notice to remove served upon defendant. The statute clearly makes a proper notice essential to the exercise of the district court's jurisdiction. *N. J. S.* 2A:18–56; *Standard Realty Co. v. Gates,* 99 *N. J. Eq.* 271, 276–277 (*Ch.* 1926). The notice is required to "specify" the cause of the termination of the tenancy. "Specify" means to name in a specific or explicit manner; to state precisely or in detail, to point out, to particularize, or to designate by words one thing from another. *Cf. Duke Power Co. v. Essex County Board of Taxation,* 122 *N. J. L.* 589 (*Sup Ct.* 1939), aff'd, 124 *N. J. L.* 41 (*E. & A.* 1940); *Brazil v. Dupree,* 197 *Or.* 581, 250 *P. 2d* 89, 254 *P. 2d* 1041 (*Sup. Ct.* 1952); *Webster's Third New International Dictionary* (1961) 2187.

■■ The notice served upon defendant here simply says the tenancy is terminated "for the reason that you have committed a breach of that covenant in your lease providing that the store premises aforesaid are 'to be used and occupied only for the retail sale of food and allied products.' " Such notice does not satisfy the mandate of the statute. It merely states a legal conclusion. *Duke Power Co. v. Essex County Board of Taxation, supra; Weller v. Kelly,* 136 *N. J. L.* 281, 283 (*Sup. Ct.* 1947). The lease does not limit defendant's use to the retail sale of food and allied products. Although that limitation appears on the first page of the current lease, it is qualified as has been noted above to allow sale of newspapers and nickel candy, operation of a dining room or restaurant and installation and operation of a soda and ice cream fountain. But of more crucial significance in appraising the sufficiency of the notice is the

failure to specify the nature of the alleged breach. It contains no particularization, no explicit or detailed statement as to the action or conduct of defendant which allegedly constituted such a violation of the use covenant as warranted a demand for a judgment for possession. The shortcoming is especially momentous because, as it later appeared by stipulation in the suit, the sale of bus tickets, whether it was *de minimis* or substantial, had been going on for six years before the notice was served. The sufficiency of the notice as a jurisdictional prerequisite must be judged within its four corners. So judged, it is fatally deficient as a spesific or explicit statement of the cause for which plaintiff was demanding possession of the premises. Accordingly the district court lacked jurisdiction to award the judgment for possession.

Furthermore, jurisdiction to enter judgment for possession depends upon establishment of a breach of the use covenant of the lease. Defendant maintains plaintiff failed to meet that burden. It is undisputed that the sale of bus tickets had been engaged in by defendant for at least six years before the notice of termination was served, for about two and one-half years before the current renewal lease was executed, for almost five years before the assignment of that lease to plaintiff as the new owner of the shopping center, and for just short of 15 months during plaintiff's ownership. The extent of the various owners' knowledge of the bus ticket sale is not detailed in the stipulation. It would have made for a better record had the facts been presented more explicitly in the stipulation or by testimony. From the stipulation and the factual statements with respect to it at the oral argument, it is reasonable to infer (at least for present purposes) that the various owners were aware that it began around October 20, 1959 and continued (with the plaintiff's knowledge) at least until the notice to remove was served.

Defendant maintains that plaintiff's predecessor's knowledge is reflected in the addendum attached to the renewal

lease later assigned to plaintiff. More specifically defendant says that paragraph "c" of the addendum of the 1963 renewal lease was intended by the parties to sanction continued sale of the bus tickets; that the language: "The tenant shall have the sole right and option to operate his business *as heretofore* * * *" was intended to accomplish that intention. Plaintiff, who was not a party to the drawing of that lease, denies that the language is susceptible of that interpretation. Of course, it cannot deny the fact of the understanding claimed by the defendant on the basis of personal knowledge because it has no such knowledge. And it produced no witness who participated in the drafting of the lease on behalf of the predecessor-owner to deny defendant's assertion. Unquestionably the significance of "as heretofore" in the context is ambiguous, and the better course for both parties to have pursued was to introduce explanatory testimony. The fact that the practice of ticket sales went on after the renewal lease without objection from the then lessor until the plaintiff acquired title provides some corroboration of defendant's position. *Michaels v. Brookchester, Inc.,* 26 *N. J.* 379, 387–388 (1958). Also, on the present record, the lack of objection may be taken as an indication that the previous owner considered the ticket sale as an inconsequential incident of the tenant's principal use of the store. Inferences of the same type, although not as substantial in quality, can be drawn against the plaintiff because of its acceptance of rent from the tenant during its 15 months of ownership. But whatever inferences are justified, the actual agreement represented by "as heretofore" remains in shadow, and in our judgment the trial court should not in fairness to either party have undertaken to decide the issue on such an inadequate record. Testimony should have been required to explain the ambiguity.

██ Since, as we have said above, the notice to terminate the tenancy was defective, thus depriving the district court of jurisdiction, the plaintiff's judgment must be reversed. Ordinarily in such a situation, the record would be remanded

for entry of judgment for defendant. If, however, defendant wishes to consent to an amendment of the notice to put it in proper form in order that a full retrial may be had on the crucial question of whether sale of the bus tickets constitutes a breach of the use covenant in the lease, that may be done. If such consent is given, or if not given and a new dispossess action is instituted, upon retrial available testimony should be submitted as to the agreement intended by the words "as heretofore" in the renewal lease. If the court finds that the intention was to sanction the continued sale of bus tickets, such agreement would be binding on plaintiff as successor in title, and prevent a judgment for possession in its favor.

In situations of this sort, it is only just that ambiguities in a lease which are reasonably susceptible of disparate interpretations should be resolved in favor of the tenant. Where doubt exists courts generally favor the tenant rather than the landlord. *Crewe Corp. v. Feiler,* 49 *N. J. Super.* 532, 542 (*App. Div.* 1958), reversed on other grds. 28 *N. J.* 316 (1958). And where a landlord claims that a limitation on the use of demised premises is imposed by a lease, all doubts with respect thereto arising from the language employed ordinarily are resolved in favor of that construction which least restricts the use. *Bevy's Dry Cleaners & Shirt Laundry, Inc. v. Streble,* 2 *Ohio St. 2d* 250, 208 *N. E. 2d* 528 (*Sup. Ct.* 1965); *Carbon Fuel Co. v. Gregory,* 131 *W. Va.* 494, 48 *S. E. 2d* 338, 341, 2 *A. L. R. 2d* 1143 (*Sup. Ct. App.* 1948). The rule of construction favoring the tenant is particularly strong when resolution of ambiguous language against him will result in a forfeiture of his estate. The law does not favor forfeitures, and as Justice Haneman said in *Lehigh Valley R. R. Co. v. Chapman,* 35 *N. J.* 177, 188 (1961), "[W]hen a choice exists [language] is to be construed against rather than in favor of a forfeiture."

The fact that plaintiff was not a party to the making of the renewal lease containing the ambiguous ad-

dendum would not help its cause. If after hearing parol evidence a trial court concluded that plaintiff's assignor and defendant intended to sanction continuance of the long-standing practice of selling bus tickets, such agreement would be binding on plaintiff. When an intending purchaser of property knows that a lessee is in occupancy, he must inquire of the tenant as to the nature and scope of his tenancy. Knowledge of the tenancy charges the new owner with notice of all information he would obtain by inquiry of the tenant with respect to the character of his occupancy. It is settled that possession of a tenant amounts to notice of his rights, not merely under the lease itself, but resulting from modifications of it and collateral agreements. If the successor in title fails to make the necessary inquiry, he is estopped to deny any of the existing rights of the tenant. *Martinique Realty Corp. v. Hull,* 64 *N. J. Super.* 599, 604–605 *(App. Div.* 1960); *Zurick v. Perlmutter,* 94 *N. J. L.* 328, 330 *(Sup. Ct.* 1920); *Caplan v. Palace Realty Co.,* 110 *A.* 584 *(Ch.* 1920), not in official reports; *Wood v. Price,* 79 *N. J. Eq.* 620, 626–629 *(E. & A.* 1911); *Havens v. Bliss,* 26 *N. J. Eq.* 363, 370 *(Ch.* 1875); and see, *R. S.* 46:8–3.

Another matter raised before us may properly be considered if the case is retried. Defendant points out that the current lease provides that if in the opinion of the tenant business conditions require a change in the character of the business, it shall have the right to do so on notice to and consent of the landlord, which consent "shall not be unreasonably withheld." Assuming sale of the bus tickets represents a partial change in the nature of the use of the premises as limited by the language of the lease, defendant claims that, even apart from the "as heretofore" clause, the circumstances reveal a clearly implied consent to the continued sale by plaintiff's predecessor and by plaintiff. Reference is made again to the years of acquiescence in the sale of the tickets by both landlords and acceptance of rent during that period without any affirmative action to prevent it. And it is argued that both landlords, recognizing that the prac-

tice had become an incident of defendant's business and realizing that refusal to consent to its continuance would be unreasonable, impliedly consented to allow it. We do not decide the question but leave it for decision after full development of the pertinent facts.

Finally defendant urges that plaintiff waived any claimed breach of covenant by accepting monthly rent for so long a period. In answer plaintiff refers to the lease provision that failure of the landlord to insist upon strict performance of lease covenants in one or more instances "shall not be construed as a waiver" of breaches occurring thereafter. There is no doubt that acceptance of rent with knowledge of the breach, if any, constitutes a waiver of all past breaches. *East Orange v. Bd. of Water Com'rs, etc.,* 41 *N. J.* 6, 18 (1963); *Plassmeyer v. Brenta,* 24 *N. J. Super.* 322, 330–331 (*App. Div.* 1953). Plaintiff had received all rent due until the end of the month of November 1965. Acceptance of the November rent waived all breaches prior to the date plaintiff received it. The notice to terminate the tenancy was served on November 6, 1965 and the issue of waiver must be determined as of that day. A decision cannot be reached on the present record. The date when the November rent was paid does not appear. Was it before the notice to terminate was served? Whenever it was paid, were there any sales of bus tickets between that date and the notice to terminate? If not the defense of waiver must be sustained. (Conduct engaged in by the parties since institution of this suit by agreement has been without prejudice.) In this connection also principles of equitable estoppel cannot be ignored. Since the sale of tickets had been engaged in for so long to the landlord's knowledge, during which time the regular rent had been tendered and accepted, thus creating a waiver of the alleged breaches, equity and good conscience would require reasonable notice from the landlord to the tenant to discontinue the practice and from thenceforth to abide by the use limitation of the lease. Unless such notice

was served and bus tickets sold thereafter, equity should bar forfeiture of the lease.

 All of the matters discussed herein are within the jurisdiction of the district court and open for its consideration in this type of proceeding as defined by *Vineland Shopping Center, Inc. v. De Marco, supra.* It may be noted also that the Superior Court in its discretion, on application of either party, may order the transfer of such cases from the district court to it for trial. *N. J. S.* 2A:18–60.

For the reasons ·expressed, the judgments of the Appellate Division and of the district court are reversed, and the cause is remanded. If the notice to terminate the tenancy is not amended by consent, judgment shall be entered for the defendant. If the necessary amendment is made, the action shall be retried in conformity with the views herein expressed.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANE-MAN—6.

*For reversal*—None.