We do not retain jurisdiction.

670 A.2d 1087

HOUSING AUTHORITY OF THE CITY OF NEWARK, PLAINTIFF–RESPONDENT, v. CAROL RAINDROP, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 13, 1995—Decided February 2, 1996.

Before Judges LONG, MUIR, Jr., and LOFTUS.

*Joseph D. Rotella* argued the cause for appellant (*Poss & Rotella*, attorneys; *Mr. Rotella* and *Mary M. Therous*, on the brief).

*Elio R. Mena* argued the cause for respondent.

*David G. Sciarra*, Senior Attorney, argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.*, President, attorney; *Mr. Sciarra*, on the brief).

*Zisa, Hitscherich and Argo,* attorneys for amicus curiae Housing Authority of the City of Hackensack (*Joseph C. Zisa, Jr.,* of counsel; *Anthony L. Argo, Jr.,* on the brief).

*DeCotiis, Fitzpatrick & Gluck,* attorneys for amicus curiae New Jersey Chapter of the National Association of Housing and Redevelopment Officials (*Michael R. DeCotiis,* of counsel; *Joseph M. DeCotiis,* on the brief).

*Verp and Leddy,* attorneys for amicus curiae Housing Authority of the City of Paterson (*Stephen A. Verp,* on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

This is a summary dispossess action to terminate a public housing tenancy on grounds that tenant's son conducted drug-related activity on the leased premises. *See N.J.S.A.* 2A:18–61.1.p. The trial court ruled the statute imposed strict liability on the tenant for the son's conduct, making need for proof of tenant's actual knowledge of the drug activity irrelevant. It found this interpretation of the statute consonant with substantive due process because defendant, the tenant, would be exempt from eviction if she demonstrated, which she did not in this case, that she had done all that reasonably could be expected to prevent the drug activity on the leased premises. *See State v. 1979 Pontiac Trans Am,* 98 *N.J.* 474, 483, 487 *A.*2d 722 (1985).

The tenant appeals from the ensuing judgment. The central focus of the briefs filed by three amici curiae and the parties relates to the trial court's strict liability construction of the statute. A fourth amicus curiae, Legal Services of New Jersey, joins in that issue but also asserts the trial court lacked jurisdiction due to plaintiff Housing Authority's failure to comply with controlling federal requirements governing termination of a public housing tenancy.

We conclude the Housing Authority's noncompliance with controlling federal requirements governing termination of the tenancy

deprived the trial court of jurisdiction over the dispossess action. Accordingly, we vacate the judgment under appeal and remand for entry of judgment in favor of the tenant. Our holding precludes the necessity to rule on the trial court's statutory construction.

The essential facts as well as fact findings of the trial court are not disputed. The Housing Authority is a public housing agency subject to the United States Housing Act of 1937, in particular 42 *U.S.C.A.* § 1437d(k) and (*l*), and regulations enacted pursuant thereto, in particular 24 *C.F.R.* § 966 (1995). (At oral argument the Housing Authority conceded it was not an entity governed by Section 8 of the Housing Act of 1937, 42 *U.S.C.A.* § 1437f.) *See generally* 81 *ALR Fed.* 844 (1987).

The Housing Authority has leased an apartment to the tenant for the last 15 years. The leases named the tenant's son, Doyle Raindrop, as an allowable resident. *See* 24 *C.F.R.* § 966.4(a)(2) (1995).

Law enforcement officials charged Doyle Raindrop, an adult at the time, with the sale of a controlled dangerous substance to an undercover detective, a violation of the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–1 to –23. The sale allegedly took place on the leased premises on June 21, 1993. The trial court found the tenant had no actual knowledge of the sale.

On July 2, 1993, pursuant to a search warrant, six law enforcement officers entered the leased apartment at 6:15 a.m. The tenant was present. The officers found eighty vials of cocaine, two chunks of crack cocaine, and a scale on a dresser in Doyle Raindrop's room. They also found $719 in a pants' pocket in his room. The police seized the noted items and arrested Doyle. They did not arrest the tenant. The tenant testified she did not recall the seizure of the contraband. Doyle thereafter continued to reside at the apartment and was doing so at the time of the dispossess hearing.

On August 23, 1993, the Housing Authority served the tenant with a "Notice Terminating Lease," which provided in pertinent part as follows:

TO: Carol Raindrop, Tenant

 1. *PRESENT LEASE:* You now rent 222 South St 1A

 . . . .

 3. *DEMAND FOR POSSESSION:* You must leave and vacate this rented property on or before September 23, 1993, the da[t]e of termination. This means you must move out and deliver possession to me, your landlord.

 4. *REASON:* Your lease is terminated for the following reason:

 You have violated (household member) NJSA:18–61.2p which prohibits the "use, possession, manufacture, dispensing or distribution of a controlled dangerous substance or drug paraphernalia within or upon the leased premises or the building or complex of buildings and land appurtenant thereto[.]" On June 21, 1993, undercover agents of the Newark Police Dept responded to the address of Ms Carol Raindrop relative to numerous complaints of drug activity in and around the area. An undercover cop made a buy of illegal drugs (cocaine) which valued $50.00 from a black male later identified as Doyle Raindrop from the apartment of 222 South Street 1A, leased to Carol Raindrop; On July 2, 1993, a search warrant was obtained and executed at the aforementioned premises whereas a large quantity of drugs were found and U.S. Currency and one, Doyle Raindrop was arrested at that time; (see Nwk Police CC# 48422 dated 6–21–93); Ms Carol Raindrop has previously been served a Notice to Cease on November 12, 1992 relative to the criminal (shooting) activities of her son on NHA property but the complaints have not stop [sic] of his involvement in illegal activities on housing property, drugs, etc. (see police CC# 88594–92) in regards to a shooting incident whereas one, Richard Rivera, was the victim of the incident and Doyle Raindrop was the shooter[.]

 5.

 You are entitled to make such reply as you wish and have the right to inspect your files regarding this matter.

The trial court was not called upon to resolve, did not ask any questions about and, therefore, did not address the issue of the adequacy of the notice to terminate.

*N.J.S.A.* 2A:18–61.1.p. of the Anti–Eviction Act affords grounds for eviction of tenants when illegal drug activity occurs within or upon leased premises. To the extent applicable here, there are grounds for eviction when the landlord proves, by a preponderance of the evidence, a tenant knowingly harbors a person who violates the Comprehensive Drug Reform Act or otherwise permits such a person to occupy the leased premises. While such proof may entitle a landlord to a judgment of possession, a court does not have jurisdiction to issue the judgment unless the written demand and written notice for delivery of possession are in accord with statutory dictates. *See N.J.S.A.* 2A:18–61.2; *cf. Carteret*

*Properties v. Variety Donuts, Inc.*, 49 *N.J.* 116, 124, 228 *A.*2d 674 (1967) (proper notice essential to exercise of court's jurisdiction).

*N.J.S.A.* 2A:18–61.2 prescribes the criteria for a demand for possession (written demand and written notice for delivery of possession). It requires the landlord to specify "in detail" the cause of the termination of the tenancy. The statutory phraseology "in detail" echoes the Supreme Court's ruling in *Carteret Properties* where it defined "specify," as required under *N.J.S.A.* 2A:18–56 for a notice to remove, to mean "name in a specific or explicit manner; to state precisely or in detail." *Carteret Properties v. Variety Donuts, Inc.*, *supra*, 49 *N.J.* at 124, 228 *A.*2d 674. Lack of strict compliance with the statutory dictates invariably requires dismissal of a dispossess action. *See id.* at 123, 228 *A.*2d 674. *See generally Housing Auth. of Morristown v. Little*, 135 *N.J.* 274, 280, 639 *A.*2d 286 (1994). Our concern is with the specificity of the notice.

Controlling federal statutes and regulations also make drug-related criminal activity grounds for eviction in federally funded public housing. 42 *U.S.C.A.* § 1437d(*l*) sets standards for public housing agency (PHA) leases. Leases must "provide that . . . any drug-related criminal activity on or near [the leased] premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy. . . ." 42 *U.S.C.A.* § 1437d(*l*)(5). The phrase "drug-related criminal activity" means illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use a controlled dangerous substance. 42 *U.S.C.A.* § 1437d(*l*). The lease also must require a PHA to give 30 days advance adequate written notice of termination of lease for any drug-related criminal activity. 42 *U.S.C.A.* § 1437d(*l*)(3)(C). Federal law further requires the Department of Housing and Urban Development (HUD) to develop regulations requiring a PHA to establish a grievance procedure concerning eviction and tenancy termination. 42 *U.S.C.A.* § 1437d(k). Drug-related criminal activity may be ex-

cluded from the grievance procedure in any jurisdiction that HUD finds provides basic elements of due process in its court eviction process. *Ibid.*

HUD enacted regulations pursuant to the statutory dictates of 42 *U.S.C.A.* § 1437d. The regulations delineate lease requirements, which include the tenant's statutory obligation to assure that the tenant, a member of the household, a guest, or another person in tenant's control does not engage in any drug-related criminal activities on or near the leased premises. 24 *C.F.R.* § 966.4(f)(12)(i)(B) (1995). They also delineate lease termination notice requirements, 24 *C.F.R.* § 966.4(*l*)(3) (1995), as well as requirements, standards, and criteria for a grievance procedure applicable to any PHA allegation of a tenant's lease violation. 24 *C.F.R.* § 966.50 to 966.57 (1995).

The lease termination notice requirements are dependent on the grounds for termination. Where the grounds are other than criminal activity or drug-related criminal activity, the PHA-established grievance procedure must be followed before court eviction is pursued. 24 *C.F.R.* § 966.51(a)(1) (1995). In those instances, the notice of lease termination must advise the tenant of the specific grounds for termination, the right to examine relevant PHA documents, and the right to request a grievance hearing in accordance with the PHA grievance procedure. 24 *C.F.R.* § 966.4(*l*)(3)(ii) (1995). Where the grounds for eviction are criminal activity or drug-related criminal activity, the PHA may decide to exclude those eviction grounds from the grievance procedure. 24 *C.F.R.* § 966.51(a)(2) (1995). In such instances, the notice of lease termination must: (1) state the tenant is not entitled to a grievance hearing on termination; (2) specify the judicial eviction procedure to be used by the PHA, in this instance the one in the Special Civil Part of the Superior Court; (3) state HUD has determined that the Special Civil Part eviction procedure provides the opportunity for a hearing that affords the basic elements of due process as defined by HUD in 24 *C.F.R.* § 966.53(c) (1995);

and (4) state the eviction is for a criminal activity or drug-related criminal activity. 24 *C.F.R.* § 966.4(*l*)(3)(v) (1995).

As a condition precedent to excluding criminal activity or drug-related criminal activity from the grievance procedure, HUD must have determined state court dispossess procedure provides the opportunity for a hearing that contains the basic elements of due process. 24 *C.F.R.* § 966.51(a)(2)(i) (1995). On June 15, 1989, HUD determined the New Jersey state court eviction proceedings under the New Jersey Anti–Eviction Act satisfied the requirements of due process. *See Housing Auth. of Jersey City v. Jackson,* 749 *F.Supp.* 622, 626 (D.C.N.J.1990).

■ The Housing Authority's lease termination notice is deficient under the federal regulations that are binding on it. The notice fails to advise the tenant she is not entitled to a grievance hearing. It also not only fails to identify the judicial court in which the eviction process is to occur, and hence the judicial procedure to be used, but also fails to advise the tenant HUD made the required due process determination. Moreover, the notice creates some confusion. By giving the tenant the opportunity to examine the Housing Authority's files, the Housing Authority references a facet that is part of the grievance procedure despite the fact the procedure is unavailable because the eviction is based on drug-related criminal activity. The incorrect reference, while not dispositive, emphasizes the need for specificity in the lease termination notice.

■ The lack of compliance with the HUD lease termination notice requirements denied the trial court jurisdiction to issue the judgment of possession. Like our state law, the federal statutes and attendant regulations reflect that the stern remedy of dispossession should be available to the landlord only when the landlord has afforded the tenant all the required pre-eviction statutory and regulatory protections. Where, as here, the notice fails to meet controlling federal standards, the tenant loses the opportunity to avail herself of those protections.

That lost opportunity has significant consequences. Federal housing legislation, and its attendant funding, are designed to provide affordable housing for low- and sometimes moderate-income families. The very fact that public housing tenants are confronted with income limitations suggests an obvious conclusion they are not financially able to, and consequently in all probability are unwilling to, take the necessary steps to confront their landlord in the more expensive and certainly more intimidating environment of a courtroom. The very fact that federal law requires establishment of grievance procedures and allows alternative remedies to eviction, even where drug-related criminal activity is involved, bespeaks recognition of the importance of affording a tenant the regulation-required notice when lease termination is considered by the landlord. Even where a tenant may be knowledgeable enough to utilize available *pro bono* legal services, we conclude there can be no basis for disregard of specific notice requirements of federal law.

It is beyond cavil a purpose behind the regulatory lease termination notice requirements is to alert tenants to the regulatory ramifications of any demand to leave rented housing. Their leases contain a provision directing they be afforded the right to file a grievance before the landlord seeks a dispossess judgment. If properly advised that right is unavailable, any reasonably diligent tenant gets a wake-up call to pursue the ramifications of that unavailability.

Here, those ramifications are the potential for not only raising defenses or challenges to the impropriety of the HUD determination, *see Housing Auth. of Jersey City, supra,* 749 *F.Supp.* at 633 (finding HUD determination improper), but also appealing to the PHA to exercise its discretion to allow the tenant to remain in possession so long as the one guilty of the criminal activity is permanently barred from the leased premises.

Even when the drug-related criminal activity is grounds for eviction, HUD regulations vest the PHA with discretion to renounce eviction after review of the totality of the circumstances.

24 *C.F.R.* § 966.4(*l* )(5)(i) (1995). To the extent applicable here, the PHA may, in the exercise of its discretion, consider the effect the eviction would have on the tenant and consider, as an alternative to eviction, continued occupancy by the tenant because he or she is not implicated in the drug-related criminal activity so long as the family member engaging in that activity is barred from residing on the leased premises. *See* 24 *C.F.R.* § 966.4(*l* )(5)(i) (1995).

The unsigned order staying the Warrant of Removal was conditioned on such a bar. Counsel for the tenant during oral argument conceded the tenant would be pleased to have the son excluded from the premises—an alternative that might well have been explored. Those facts suggest barring the son may have been a viable alternative to evicting the tenant. Hence, proper notice could have obviated the court proceedings under review.

■ We cannot regard the lease termination notice failures here as technical noncompliance with the federal regulations. We view those failures as substantive noncompliance prejudicial to the tenant. Where, as here, a PHA fails to serve a notice of lease termination consonant with the dictates of governing federal regulations, we conclude it fails to comply with the specificity a demand for possession must have under the Anti–Eviction Act. The lack of specificity, as it invariably must, denied the trial court jurisdiction. Failure to resolve the notice issue constituted plain error. *R.* 2:10–2. Consequently, the judgment for possession is vacated and the matter remanded to the trial court for entry of judgment in the tenant's favor. By so ruling, however, we do not suggest the Housing Authority is precluded from serving a proper new notice of lease termination based on violation of either federal law or state law proscribing drug-related criminal activity on, within, or near the leased premises.

Due to our conclusion, we do not reach the issue of whether *N.J.S.A.* 2A:18–61.1.p., under the circumstances here, imposes strict liability on a tenant for a Comprehensive Drug Reform Act violation by another on or within the leased premises.

Reversed and remanded for entry of judgment in favor of defendant.