**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4354-18T2

ROSEVILLE GROUP, LLC,

     Plaintiff-Respondent,

v.

MASON DIXON,

     Defendant-Appellant.

_____

Submitted March 18, 2020 — Decided April 8, 2020

Before Judges Koblitz and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Special Civil Part, Essex County, Docket No. LT-010595-19.

Lessie B. Hill, attorney for appellant.

Jonathan R. Mehl, attorney for respondent.

PER CURIAM

Defendant Mason Dixon appeals from a June 6, 2019 judgment of possession entered in favor of plaintiff Roseville Group, LLC following a trial. We reverse.

Beginning in October 2009, defendant resided in unit C01[1] of an apartment building on Roseville Avenue in Newark. In January 2019, plaintiff served defendant with a notice to cease which stated:

> According to . . . . N.J.S.A. 2A:18-61.1 . . . you may be evicted for the following reasons:
>
> You are doing things and/or allowing others to do so in and about your apartment (including the exterior and backyard) which are disturbing the peace and quiet enjoyment of other tenants and residents in the building. This includes drinking, doing drugs and/or permitting prostitution. There is excessive noise and disturbances.
>
> Your actions are further in violation of [s]ection 26(a) of your lease which reads: "The comfort and rights of other tenants must not be interfered with. Annoying sounds and odors, and lights are not allowed. Tenant shall be responsible for the conduct of [t]enant's guests and family members."

Over a month later, plaintiff served defendant with a notice to quit terminating defendant's tenancy for failure to comply with the notice to cease and requiring him to vacate the apartment by March 31, 2019. Defendant did

---

[1] The record also reflects the apartment was also referred to as 1C and C1.

not vacate. Plaintiff filed a complaint for possession, and in April 2019 defendant filed a motion to dismiss the complaint. The motion attached defendant's April 30, 2019 certification, in which he certified his rent was "fully paid." At trial, the judge heard testimony from plaintiff's superintendent William Quinones, defendant, and defendant's brother Clayton Dixon[2].

Quinones testified he lived on the same floor as plaintiff and part of his job was to clean and maintain the building and walk the hallways to assure unauthorized individuals did not enter, because he observed prostitution and drug use in the building's vicinity. He claimed these individuals attempted to force entry through the rear of the building with a screwdriver and some had keys, even though they did not reside in the building.

Quinones stated that over a period of several months he encountered two females and a male who did not live in the building, but claimed they were heading to defendant's apartment. He often observed them arguing and fighting in the hallway, "smoking[ and] shooting" drugs, leaving behind "[d]ope bags [and] pipes" which Quinones cleaned up. Quinones also stated he received complaints about people sleeping in the hallways "usually by [apartment] 1C"

---

[2] We utilize Clayton's first name because he shares a common surname with defendant. We intend no disrespect.

A-4354-18T2

and observed these individuals entering defendant's apartment. He called the police to prevent these individuals from disturbing tenants, but beyond one occasion when police escorted one of the females off the property, police did not respond.

Quinones asserted the females were engaging in illegal prostitution because he observed them loitering on the corners near the buildings and entering vehicles. He also observed them engaging in sex acts inside the building's laundry room. Quinones testified these individuals came to defendant's apartment looking for Clayton. According to Quinones, Clayton was not on the lease and illegally resided in defendant's one-bedroom apartment. Quinones testified he addressed the issue of the visitors with defendant "plenty of times" and "[defendant] said[] [']tell them that I'm not here['] But when I do do that I see[] them walk right back into his apartment."

Following Quinones' testimony, plaintiff's counsel sought to admit defendant's lease into evidence. Defense counsel objected and argued there was no lease because the purported lease document was dated October 2009, ran only for one year, and was unsigned. The trial judge admitted the lease, noting that while it may be expired "all the other provisions of the lease still remain in full

force and effect.  The only difference is that the tenant becomes a month to month tenant . . . ."

Defendant testified he retired from the Newark Housing Authority one month prior, after a thirty-six-year career.  He stated he resided in apartment C01 since October 2009, paid the rent, and no one else resided with him.  He stated Clayton visits him frequently and sleeps at the apartment "once a week, twice a week."  He denied any involvement in prostitution or drug use, but saw people sleeping and selling drugs in the hallway.  He claimed his only visitors were his niece, nephew, and Clayton's grandson.  Defendant testified he never received a complaint regarding a disturbance during his ten-year tenancy before receiving the notice to cease.

Clayton testified he resided in Irvington for approximately eight years and as proof produced his driver's license showing his address.  He testified he visited defendant "[s]ometimes three times, four times a week" and spent nights at defendant's residence when they returned late from work together.  He observed people sleeping in the hallway but denied knowing these individuals, or any involvement with prostitution or drug use.

The judge credited Quinones' testimony that defendant violated the terms of the lease because Quinones saw "these people coming to 1C [who] were also

seen standing on the corner, propositioning people in the cars. . . . He's seen them . . . in the hallways of the property smoke crack, shoot up. There were two ladies and one guy, they go to [defendant's] apartment." Based on Quinones' testimony, the judge concluded Clayton also lived at the property because the frequency with which Quinones saw him was similar to the frequency of visitation according to Clayton's testimony.

According to the judge, in addition to "hanging out in the hallway, sleeping in the hallway, and sleeping in common areas" Quinones testified

> he personally has witnessed drug paraphernalia, smoke, coming from people who are in the apartment. . . . However, he has not personally observed [defendant] doing drugs. Nonetheless these persons respond to any inquiry saying that they are there to visit the people in C1 and they are hanging around the property on a regular basis.

The judge concluded the notices to cease and quit were adequate. As to the expired lease, the judge found defendant was "at best a hold over tenant." She rejected his argument there was no lease and noted "that that in and of itself is a guarantee of the lack of credibility of this tenant, because he's been there for over ten years, and obviously started with a lease, so they wouldn't have let him into the building to begin with." She concluded "that while the tenant himself may not be . . . using drugs, he is responsible for the conduct under the [c]ommon

[l]aw of those . . . invitees [of] the premises. Whether they be his direct invitees, or his indirect invitees of others whom he allows to stay at the property."

On appeal, defendant argues the trial judge lacked jurisdiction to grant a judgment of possession because the notices to cease and quit were defective for the following reasons: (1) alcohol consumption was not a valid basis to issue the notice; (2) the notices and Quinones' testimony were not specific as to the dates the conduct complained in them occurred; (3) there was no evidence to corroborate the conduct set forth in the notices and Quinones' testimony regarding the prostitution, drug usage, or excessive noise near defendant's apartment; (4) there was no signed lease between the parties and therefore the terms of the lease cited in the notices did not apply; and (5) plaintiff accepted rent after issuing the notice to quit, which created a new tenancy and constituted a waiver of its claims. Defendant also claims the judge "failed to make adequate findings . . . , did not resolve disputed facts, interfered with defendant's right to cross-examination, and made conclusions not based upon the evidence."

"'[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" In re Forfeiture of Pers. Weapons & Firearms

Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). In contrast, a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citation omitted).

N.J.S.A. 2A:18-61.2 states notices for removal of a tenant "shall specify in detail the cause of the termination of the tenancy."

> The Legislature's purpose in requiring landlords to specify in detail the cause for termination is, in part, to allow tenants an adequate opportunity to prepare a defense before trial. The Legislature has also recognized a tenant's general right to know as much as possible about any eviction proceeding brought against him or her. The Legislature, thus, requires a landlord to specify in detail the cause for termination and the procedures that must follow.
>
> [Aspep Corp. v. Giuca, 269 N.J. Super. 98, 103-04 (Law Div. 1993).]

In Carteret Props. v. Variety Donuts, Inc. the Supreme Court invalidated a notice which purported to terminate a tenancy "for the reason that you have committed a breach of that covenant in your lease providing that the store

8

premises aforesaid are 'to be used and occupied only for the retail sale of food and allied products.'" 49 N.J. 116, 124 (1967). The Court held "[s]uch notice does not satisfy the mandate of the statute. It merely states a legal conclusion." Ibid.

Here, the notices served on defendant met the statute's requirement for specificity. Both notices explained the type of conduct the landlord complained of and quoted the portion of the lease prohibiting the conduct. Most importantly, the record demonstrates defendant was not at a disadvantage or without an adequate opportunity to prepare a defense due to the contents of the notices.

We are also satisfied Quinones' testimony was specific enough to permit the trial judge to decide whether the conduct complained of in the notices was a violation of the lease. Although the consumption of alcohol was not grounds for termination of the lease, Quinones' testimony focused on the drug activity and individuals sleeping in the hallway whom he saw entering and exiting defendant's apartment. The judge found Quinones' testimony more credible than that of defendant and his brother. This was enough to resolve the matter and did not require further corroborative evidence.

We reject defendant's argument there was no lease. His testimony corroborated the lease plaintiff presented and demonstrated his tenancy

commenced in October 2009. The expiration of the lease a year later did not terminate it and instead converted it to a month-to-month tenancy because defendant remained and continued to pay rent. N.J.S.A. 46:8-10. The terms of the lease continued to apply. "A month-to-month tenancy is a continuing relationship that remains unabated at its original terms until terminated by one of the parties." Harry's Vill., Inc. v. Egg Harbor Twp., 89 N.J. 576, 583 (1982). As the trial judge noted, defendant's argument was illogical because it failed to explain why plaintiff had allowed him to reside in the apartment for a decade without a lease. This argument is without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Notwithstanding, the record is clear that plaintiff accepted rent from defendant after issuing the notice to quit. There was no indication defendant was behind on the rent. Indeed, the judge acknowledged in her opening remarks that "it's not a non-payment . . . case." "[T]he acceptance of rents after a [n]otice to [t]erminate constitutes a waiver as a matter of law." Royal Assocs. v. Concannon, 200 N.J. Super. 84, 90 (App. Div. 1985) (citing Carteret Props., 49 N.J. at 129). This issue was raised before the trial judge in defendant's motion to dismiss. The judge misapplied the law when she did not grant the motion.

Defendant's remaining arguments respecting the sufficiency of the judge's findings and the conduct of the trial lack merit, and do not warrant further discussion.  R. 2:11-3(e)(1)(E).

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION