257 N.J. Super. 499 (1992)
608 A.2d 960
HARRY WEISE AND SELENE WEISE, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS,
v.
DOVER GENERAL HOSPITAL AND MEDICAL CENTER, KENT J. MAY AND VIRGINIA J. MAY, HUSBAND AND WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1992.
Decided June 26, 1992.
*500 Before Judges HAVEY, CONLEY and PESKOE.
Lynda Diane Baydin, argued the cause for appellants (Lynda Diane Baydin, of counsel and on the brief).
Andrew F. McBride, III argued the cause for respondents (Kalison & McBride, attorneys; James V. Hetzel and Andrew F. McBride, on the brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
Plaintiffs appeal summary judgment granted in favor of defendant Dover General Hospital (Dover) dismissing their *501 complaint. The complaint alleges a violation of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12. We reverse.
From 1980 to May 15, 1990 plaintiffs were residential tenants of Dover occupying, pursuant to month-to-month leases, a house located at 22 Hurd Street, Mine Hill. In 1988 and 1989 Dover considered conversion of the house from residential use to an adult day care center for its alzheimer patients. In September 1989 a decision was made to file a site plan application with the Mine Hill Zoning Board for the conversion and a proposal from an engineering firm for traffic studies and design work was obtained.
Consistent with its plans to convert the use of the house, on September 29, 1989 Dover served upon plaintiffs a notice to quit. The notice was issued pursuant to N.J.S.A. 2A:18-61.1h which permits removal of residential tenants protected by the act where the owner of the property "seeks to retire permanently the residential building ... from residential use." Plaintiffs were requested to vacate by March 31, 1991. See N.J.S.A. 2A:18-61.2d (18 months notice to quit required for removal pursuant to N.J.S.A. 2A:18-61.1h). Specifically the notice stated:
You are hereby notified to vacate and quit the premises leased and currently occupied by you from Dover General Hospital and Medical Center, being the house located at 22 Hurd Street, Mine Hill, New Jersey, on March 31, 1991 and to deliver possession of the property to us on that date. Your tenancy is being terminated by us under N.J.S.A. 2A:18-61.1(h) because we are permanently retiring this property from residential use.
Although not contained in the written notice, plaintiffs were orally advised that the reason for the notice was Dover's plan to convert the property to an adult day care facility. At the same time, they were served with a separate notice to quit and offer of new tenancy raising their rent from $431.25 to $563, which they accepted. The offer, however, also permitted Dover to further raise the rent upon 60 days notice.
According to Mrs. Weise's certification filed in opposition to Dover's motion for summary judgment, plaintiffs did not want to move, but felt "compelled to consider moving immediately." *502 Mr. Weise, then 63, had been laid-off from his job in February 1989[1] and, as Mrs. Weise said in her certification:
The Notice of Eviction as well as the Notice of Termination of my husband's employment were almost all that we could deal with at the same time. Although the notice gave us eighteen (18) months before the Order of Eviction would be issued, we felt compelled to consider moving immediately. This was due to the fact that the hospital had given us a thirty percent (30%) increase in rent and in the new lease reserved the right to increase the rent further upon sixty (60) days notice. Had it wanted to, the hospital could have given us a rent increase each month provided it complied with the sixty (60) day notice or so I believed.
The message from the hospital was loud and clear. Whatever the hospital planned to do with the house, it wanted us out in a hurry. Although my husband was still looking for a job, I began searching for an alternate place to live.
They could not find affordable comparable housing in New Jersey and ultimately purchased a small farm house in Virginia.
Plaintiffs notified Dover they would vacate the house by May 15, 1990. According to Mrs. Weise, on May 15, 1990 Dover's Director of Facility Planning and Construction, George Sherman, called plaintiffs and asked if he could bring a real estate agent to see the house. And indeed, although plaintiffs did not then know it, Dover had changed its plans for the conversion of the house and intended to sell it for residential use because the expansion costs could exceed the initial estimates and the then applicable zoning requirements would preclude expansion. Dover disputes whether this change of position occurred before or after plaintiffs moved to Virginia. There is, however, no dispute it occurred before the end of the 18 month notice to quit.
The property was in fact listed for sale and on November 29, 1990 it was sold to defendants Kent and Patricia May. At no point prior to its sale were plaintiffs advised the plan to convert the property from residential use to a day care use had been abandoned and that its use would be residential. In this *503 respect and critical to this appeal, N.J.S.A. 2A:18-61.1e directs that:
[i]f a dwelling unit becomes vacated after notice has been given that the owner ... seeks to retire permanently the premises from residential use pursuant to subsection ... h of [N.J.S.A. 2A:18-61.1] and if at any time thereafter an owner instead seeks to return the premises to residential use, the owner shall provide the former tenant:
a. Written notice 90 days in advance of any return to residential use or any agreement for possession of the unit by any other party, which notice discloses the owner's intention to return the unit to residential use and all appropriate specifics;
b. The right to return to possession of the vacated unit or, if return is not available, the right to possession of affordable housing relocation in accordance with the standards and criteria set forth for comparable housing as defined by [N.J.S.A. 2A:18-61.7]....
The statute further requires that a copy of the 90-day notice be sent to the rent board, or municipal clerk if there is no rent board, and sets forth certain penalties for failure to comply.[2]
It is undisputed Dover did not comply with this notice requirement. In granting summary judgment, the trial judge said:
I have to agree with the argument of the defendant that the purpose of this law was to protect tenants against unscrupulous landlords and there is nothing to indicate that the hospital did anything other than try to get its purpose in that building, to get the Alzheimer's Center there and when that was failing, they had a notice from the tenants, I'm going to leave on the  in April and they went ahead and contacted real estate brokers to sell the property and they went and sold it to a person who is going to be an owner-occupant which is something that they should have done with a little bit different approach as to notice, but I have a whole picture here that the  everything that was done by the hospital was done in good faith.
The statute as far as residential occupancy is concerned, I think that was intended to protect tenants and not to prevent an owner of property, the new owners, from going into occupancy and so I don't see anything wrong here and *504 I think under the statute it doesn't really apply to the situation, coupled with a little bit of, oh, some kind of an equitable estoppel here that they still had over a year's time and really didn't prepare themselves for the move they made and they might have had more time as a result of that. I don't know. We can always speculate. They might have been able to buy the place even. I don't know, but that's neither here nor there.
We disagree.
As we have recently observed, "courts have been insistent upon the landlord's punctilious compliance with all statutory eviction procedures," including notice provisions. Sacks Realty Co. v. Batch, 248 N.J. Super. 424, 426, 591 A.2d 660 (App.Div. 1991); Sibig & Co. v. Santos, 244 N.J. Super. 366, 368, 582 A.2d 840 (App.Div. 1990); RWB Newton Assoc. v. Gunn, 224 N.J. Super. 704, 709, 541 A.2d 280 (App.Div. 1988); Georgia King Assoc. v. Fraiser, 210 N.J. Super. 146, 148, 509 A.2d 262 (App.Div.), certif. denied, 105 N.J. 529, 523 A.2d 171 (1986). This is so even though the landlord's action may have been in good faith, the tenant may not have been prejudiced, and public policy may not have been offended. Sacks Realty Co. v. Batch, 248 N.J. Super. at 426, 591 A.2d 660.
We reject Dover's contention the notice requirements of N.J.S.A. 2A:18-61.1e apply only to return of property for tenancy use, not "personal occupancy by a new owner." Not only is the term "residential use" not so limited, but N.J.S.A. 2A:18-61.1a, setting forth the legislative findings and intent for the enactment of N.J.S.A. 2A:18-61.1e, specifically refers to a finding that "[a]cute State and local shortages of supply and high levels of demand for residential dwellings have motivated removal of blameless tenants in order to directly or indirectly profit from conversion to higher income rental or ownership interest residential use." (Emphasis added). This is an explicit recognition by the Legislature that residential use encompasses both a rental interest and a fee simple interest.
We also reject Dover's contention that even if it should have notified plaintiffs of its intention not to convert the property, it matters not because it could have evicted plaintiffs *505 pursuant to N.J.S.A. 2A:18-61.1l(3). Eviction pursuant to that subsection is permitted where the owner "seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing...." Dover did not seek to personally occupy the house and at the time it gave plaintiffs the statutory notice to quit, it did not have a contract to sell to the Mays providing for the vacating of the premises upon closing.
As recognized by the Legislature, housing shortages in the State have led to "unfortunate attempts to displace tenants employing pretexts, stratagems or means other than those provided pursuant to the intent of State eviction laws designated to fairly balance and protect rights of tenants and landlords." N.J.S.A. 2A:18-61.1a(b). It is in the "public interest of the State to maintain for citizens the broadest protections available under State eviction laws to avoid such displacement and resultant loss of affordable housing...." N.J.S.A. 2A:18-61.1a(d). The protection afforded by N.J.S.A. 2A:18-61.1e responds in part to these concerns. To be sure, there is no evidence of any bad faith on the part of Dover here. But even so, we think nothing short of strict compliance is required.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Mr. Weise's employer was defendant Dover. He had worked for Dover since March 1976. Housing had been provided to them since that time.
[2] Specifically, N.J.S.A. 2A:18-61.1e provides:

... [a]n owner who fails to provide a former tenant a notice of intention to return to residential use pursuant to this section is liable to a civil penalty of not less than $2,500.00 or more than $10,000.00 for each offense, and shall also be liable in treble damages, plus attorney fees and costs of suit, for any loss or expenses incurred by a former tenant as a result of that failure....
See also N.J.S.A. 2A:18-61.6.