852 A.2d 1136

KUZURI KIJIJI, INC., PLAINTIFF–APPELLANT, v. SHEREE
BRYAN, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 21, 2004—Decided July 21, 2004.

Before Judges KESTIN, CUFF and WINKELSTEIN.

*Jeffrey R. Kuschner* argued the cause for appellant.

*Kenneth M. Schultz* argued the cause for respondent (*Essex Newark Legal Services,* attorneys; *Cesar E. Torres, Mr. Schultz* and *Frantz Masse,* on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

In this appeal, we address whether the language of the model lease for federally subsidized housing is consonant with State law.

We must decide whether the language in the lease is sufficient to establish a right of re-entry as required by *N.J.S.A.* 2A:18–61.1. The trial judge held that the lease did not contain the required reservation and dismissed the complaint. We hold that the lease language is sufficient to reserve a right of re-entry. Accordingly, we reverse and remand for further proceedings.

Plaintiff, Kuzuri Kijiji, Inc., is the owner of a 236–unit apartment building located in East Orange. The building is "a multifamily housing project," partially subsidized by the United States Department of Housing and Urban Development (HUD). Plaintiff's operation of the apartment building is subject to the policies and procedures established by HUD for public housing projects. Some of these policies and procedures are part of a handbook published by HUD entitled, "HUD Handbook 4350.3–CHG 19: Occupancy Requirements of Subsidized Multifamily Housing Programs" (HUD Handbook). The HUD Handbook "is a one-source 'rule book' on the occupancy policies and procedures governing the subsidized multifamily programs" of HUD. According to the HUD Handbook, "tenants must execute leases that meet the requirements of paragraph 4–2." Section 4–2 requires owners of HUD housing projects to use one of three model leases contained in the HUD Handbook appendix.

Defendant, Sheree Bryan, is a tenant in the apartment building. On April 1, 1996, defendant entered into a lease for apartment unit 3201. The lease was one of the model form leases drafted by HUD and contained twenty-seven paragraphs. The lease provided for a tenancy of one-year and automatically continued for successive one-year terms unless the lease was terminated. According to its provisions, defendant agreed to pay plaintiff a subsidized monthly rent of $73.

The present case implicates two provisions of the lease, Paragraph 13 and Paragraph 23. Paragraph 13 of the HUD lease is entitled "General Restrictions" and outlines a generic agreement between plaintiff and defendant regarding certain prescribed and

proscribed actions. Specifically, the paragraph provides in perti-
nent part:

> The Tenant must live in the unit and the unit must be the Tenant's only place of
> residence. The Tenant shall use the premises only as a private dwelling for
> himself/herself and the individuals listed on the *Certification and Recertification of
> Tenant Eligibility.* The Tenant agrees to permit other individuals to reside in the
> unit only after obtaining the prior written approval of the Landlord. *The Tenant
> agrees not to:*
>
> a. sublet or assign the unit, or any part of the unit;
>
> b. use the unit for unlawful purposes;
>
> c. engage in or permit unlawful activities in the unit, in the common areas or on
> the project grounds;
>
> d. *have pets or animals of any kind in the unit without the prior written
> permission of the Landlord;* or
>
> e. make or permit noises or acts that will disturb the rights or comfort of
> neighbors. The Tenant agrees to keep the volume of any radio, phonograph,
> television or musical instrument at a level which will not disturb the neighbors.
> (emphasis added).

Paragraph 23 is entitled "Termination of Tenancy" and outlines
the procedures for terminating the lease agreement. The para-
graph states in pertinent detail that:

> b. *Any termination of this Agreement by the Landlord must be carried out in
> accordance with HUD regulations, State and local law, and the terms of this
> Agreement.* The Landlord may terminate this Agreement only for:
>
> ° the Tenant's material noncompliance with the terms of this Agreement;
>
> * * *
>
> The term [material] noncompliance with the lease includes: (1) one or more
> substantial violations of the lease; (2) repeated minor violations of the lease that:
> (a) disrupt the livability of the project, (b) adversely affect the health or safety of
> any person or the right of any tenant to the quiet enjoyment of the leased premises
> and related project facilities, (c) interfere with the management of the project, or
> (d) have an adverse financial effect on the project; (3) failure of the tenant to
> timely supply all required information on the income and composition, or eligibility
> factors, of the tenant household (including, but not limited to, failure to meet the
> disclosure and verification requirements for Social Security Numbers, or failure to
> sign and submit consent forms for the obtaining of wage and claim information
> from State Wage Information Collection Agencies), or to knowingly provide
> incomplete or inaccurate information; and (4) non-payment of rent or any other
> financial obligation due under the lease beyond any grace period permitted under
> State law. The payment of rent or any other financial obligation due under the

lease after the due date but within the grace period permitted under State law constitutes a minor violation.

c.  If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice of the proposed termination.  If the Landlord is terminating this agreement for "other good cause," the termination notice must be mailed to the Tenant and hand-delivered to the dwelling unit in the manner required by HUD at least 30 days before the date the Tenant will be required to move from the unit.  Notices of proposed termination for other reasons must be given in accordance with any time frames set forth in State and local law.  Any HUD-required notice period may run concurrently with any notice period required by State or local law.  All termination notices must:

o   specify the day this Agreement will be terminated;

o   state the grounds for termination with enough detail for the Tenant to prepare a defense;

o   advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord.  The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed.  If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant; and

o   advise the Tenant of his/her right to defend the action in court. (emphasis added).

On July 24, 2001, plaintiff served defendant with a Notice to Cease based on five violations of the lease agreement.  Plaintiff informed defendant that the possession of a dog in her unit without permission violated Paragraph 13 of the lease.  Plaintiff gave defendant until July 30, 2001, to remove the dog from the apartment.  The Notice to Cease was followed by two incidents. On or about May 29, 2002, Sirleaf Woewiyu, one of defendant's neighbors, filed a complaint with the City of East Orange regarding a dog bite.  In the complaint, the neighbor alleged that a "medium sized white dog" owned by defendant, bit him.  Then, on November 18, 2002, a mailman called and informed plaintiff that he would no longer deliver mail to the building.  The mailman alleged that defendant's dog freely roamed around the building, chased him and nearly bit him.  On November 21, 2002, plaintiff served defendant with a Notice to Quit for violating Paragraph 13 of the lease.

On February 4, 2003, plaintiff commenced an action for summary eviction under *N.J.S.A.* 2A:18–61.1(e)(1) for material noncompliance with the terms of the lease.  Defendant filed a motion

to dismiss arguing that plaintiff had failed to reserve a right of re-entry in the lease. On March 20, 2003, defendant's motion was denied and plaintiff presented two witnesses. Defendant renewed her motion to dismiss the complaint and the judge ordered the parties to brief and argue the issue. Following oral argument on April 30, 2003, defendant's motion to dismiss was denied.

The judge held that plaintiff was not required to reserve a right of re-entry in the lease because defendant breached the lease by conducting an illegal activity, owning a dog without a license. The judge also denied defendant's motion on another ground. He ruled there was a conflict between the lease and State law. The judge reasoned that the State statutory requirement of a right of re-entry conflicted with the HUD lease, which fails to reserve such a right. He determined that the language of the HUD lease trumps *N.J.S.A.* 2A:18–61.1(e)(1) under the Supremacy Clause of the United States Constitution. The judge concluded that "HUD does not want a tenant in possession where a tenant has not complied with the terms of the agreement in a material way."

Defendant filed a timely motion for reconsideration, which was granted. The judge held that under New Jersey law, a tenant cannot be evicted for a substantial breach of the lease without an explicit right of re-entry in the lease. He also held that the federal regulatory requirement that leases and eviction proceedings conform with State law obviates any preemption argument. Finally, the judge reconsidered his determination that the maintenance of an unlicensed dog could be considered a material breach of a lease. He held that *N.J.S.A.* 2A:18–61.1(e)(2) contemplated serious crimes and offenses as a basis to terminate a leasehold, not the failure to register a dog contrary to a municipal ordinance.

■ The landlord concedes that the lease does not contain the words "right of re-entry," but argues that the terms of the lease, particularly Paragraph 23, employ functionally equivalent language. It also contends that if the lease language does not comport with State law, then the State law requirement must yield

to the rules and regulations governing leases for federally subsidized housing.

The Anti–Eviction Act (the Act), *N.J.S.A.* 2A:18–61.1 to – 61.12, "was adopted in 1974 in 'recognition of the severe housing shortage in the state.'" *224 Jefferson St. Condo. Ass'n v. Paige,* 346 *N.J.Super.* 379, 383, 788 *A.*2d 296 (App.Div.) (quoting *A.P. Dev. Corp. v. Band,* 113 *N.J.* 485, 492, 550 *A.*2d 1220 (1988)), *certif. denied,* 172 *N.J.* 179, 796 *A.*2d 896 (2002); *see also 25 Fairmount Ave., Inc. v. Stockton,* 130 *N.J.Super.* 276, 281–88, 326 *A.*2d 106 (Cty.Dist.Ct.1974) (providing a detailed history of New Jersey landlord-tenant law and a thorough examination of the provisions in the Act). It was also "enacted in response to a legislative recognition that residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems." *Les Gertrude Assocs. v. Walko,* 262 *N.J.Super.* 544, 548, 621 *A.*2d 522 (App.Div.1993). The Act provides "'residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction ... and thereby to protect them from involuntary displacement.'" *224 Jefferson St. Condo. Ass'n, supra,* 346 *N.J.Super.* at 383, 788 *A.*2d 296 (quoting *Morristown Mem'l Hosp. v. Wokem Mortgage Realty Co.,* 192 *N.J.Super.* 182, 186, 469 *A.*2d 515 (App.Div.1983)). "The purpose of the [Act] was not to eliminate evictions but to limit them to reasonable grounds." *Les Gertrude Assocs., supra,* 262 *N.J.Super.* at 548, 621 *A.*2d 522. Finally, "the dominating principle in construing the Act [is] that it must be construed liberally with all doubts construed in favor of a tenant." *224 Jefferson St. Condo. Ass'n, supra,* 346 *N.J.Super.* at 389, 788 *A.*2d 296.

*N.J.S.A.* 2A:18–61.1 addresses the removal of residential tenants and the grounds for such action. A landlord cannot evict a tenant from his or her apartment unless the landlord establishes good cause as prescribed by statute. *N.J.S.A.* 2A:18–61.1. According to *N.J.S.A.* 2A:18–61.1(e)(1), a landlord may establish good cause by demonstrating that the tenant has continued to substantially vio-

late or breach a covenant or agreement in the lease. However, there are several procedural hurdles that a landlord must satisfy prior to evicting a tenant. First, the landlord must provide a written Notice to Cease to the tenant regarding his or her substantial violation of the lease. *Ibid.* Second, the covenant or agreement in question must be reasonable and contained in the lease at the beginning of the lease term. *Ibid.* Finally, "a right of re-entry [must be] reserved to the landlord in the lease for a violation of such covenant or agreement...." *Ibid.*; 23 *New Jersey Practice, Landlord and Tenant Law,* § 16.141, at 20 (Raymond I. Korona) (5th ed.2001).

A right of re-entry is a "right reserved by a grantor to enter the premises on breach of a condition of the conveyance." *Black's Law Dictionary* 1280 (6th ed.1990). The act of re-entry represents the resumption of possession of tenements pursuant to "a right which [the] party exercising it reserved to himself when he quit his former possession." *Ibid.; see Michaels v. Fishel,* 169 *N.Y.* 381, 62 *N.E.* 425, 427–28 (1902) (providing an excellent history of the right of re-entry). "The landlord's remedy of re-entry is of ancient origin and is well-known to the common law." 52A *C.J.S. Landlord & Tenant* § 716 (1968). "Since a lessor surrenders both possession and control of land to the lessee, retaining only a post-term reversionary interest, the lessor retains not even a right of re-entry during the term of the lease without permission of the lessee." 49 *Am.Jur.2d Landlord and Tenant* § 912 (1995). Hence, "the landlord's right to re-enter should appear as a matter of contract or be prescribed by statute." 52A *C.J.S. Landlord & Tenant, supra,* § 716.

The language of *N.J.S.A.* 2A:18–61.1(e)(1) demonstrates a clear intent by the Legislature to require a landlord to reserve a right of re-entry in the lease if the landlord desires to exercise the statutory power to evict a tenant for cause during the term of the lease. Without the right of re-entry, a landlord cannot evict a tenant for cause during the lease term. *N.J.S.A.* 2A:18–61.1(e). Furthermore, there is *no indication within the Act or any other*

statutory provision that the Legislature intended to utilize a definition for the right of re-entry other than its common law meaning.

The Legislature reiterated its intentions in 1997, with the passage of Senate Bill No. 1093. *L.* 1997, *c.* 228, § 1. This law amended *N.J.S.A.* 2A:18–61.1(e) by adding a second subsection, *N.J.S.A.* 2A:18–61.1(e)(2). *L.* 1997, *c.* 228, § 1. The purpose of the amendment was to provide "for easier eviction of certain drug offenders from public housing projects." *L.* 1997, *c.* 228; *see Housing Auth. Urban Redevelopment Agency of Atlantic City v. Spratley,* 327 *N.J.Super.* 246, 251–54, 743 *A.*2d 309 (App.Div.1999). According to subsection (e)(2), a landlord can establish good cause for eviction by demonstrating that a tenant substantially violated a covenant or agreement "pertaining to illegal uses of controlled dangerous substances, or other illegal activities...." *N.J.S.A.* 2A:18–61.1(e)(2). This subsection expressly allows for an eviction "whether or not a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement...." *Ibid.* If the right of re-entry was unnecessary, obsolete or out-dated, the Legislature would not have included the previous phrase in subsection (e)(2). Furthermore, under this amendment, the Legislature implicitly reaffirmed its intention in *N.J.S.A.* 2A:18–61.1(e)(1) to require the reservation of a right of re-entry for a good cause eviction. The public policy behind the Act further strengthens this proposition.

"The Act reflects a public policy barring dispossess actions except upon strict compliance with the notice and procedural requirements of the Act." *224 Jefferson St. Condo. Ass'n, supra,* 346 *N.J.Super.* at 383, 788 *A.*2d 296; *see Bayside Condo., Inc. v. Mahoney,* 254 *N.J.Super.* 323, 325, 603 *A.*2d 528 (App.Div.1992) ("The public policies underlying *N.J.S.A.* 2A:18–61.1 *et seq.* ... demand strict compliance with the provisions and conditions of the Act before a landlord may succeed in evicting a tenant."). This court has "defined 'strict compliance' as 'punctilious' compliance with all of the Act's provisions, including the notice provisions."

*224 Jefferson St. Condo. Ass'n, supra*, 346 *N.J.Super.* at 383, 788 *A.*2d 296 (quoting *Weise v. Dover Gen. Hosp.*, 257 *N.J.Super.* 499, 504, 608 *A.*2d 960 (App.Div.1992) (citations omitted)). It has "required strict compliance even though the landlord has acted in good faith or the tenant has not been prejudiced." *Ibid.; see 25 Fairmount Ave., Inc., supra*, 130 *N.J.Super.* at 288, 326 *A.*2d 106 ("As legislation in derogation of the common law, [the Act] is to be strictly construed."). Furthermore, the Act " 'leaves no latitude for a judicial construction which excuses failure to give the specified notice.' " *224 Jefferson St. Condo. Ass'n, supra*, 346 *N.J.Super.* at 383–84, 788 *A.*2d 296 (quoting *Vander Sterre Bros. Constr. v. Keating*, 284 *N.J.Super.* 433, 438, 665 *A.*2d 779 (App.Div.1995)). Therefore, "absent strict compliance with the requirements of the Act, a court is without jurisdiction to entertain a summary dispossession action." *Id.* at 384, 788 *A.*2d 296; *see Bayside Condo., Inc., supra*, 254 *N.J.Super.* at 326–27, 603 *A.*2d 528.

In this case, the pet prohibition from Paragraph 13 was part of the lease at the beginning of the lease term and neither party disputes the reasonableness of this provision. Plaintiff also provided defendant with a written Notice to Cease on July 24, 2001. Again, plaintiff and defendant agree that this notice was adequate under the statute. The only outstanding issue is whether the landlord reserved a right of re-entry in the lease. Plaintiff concedes that the lease in question does not contain the words, "right of re-entry," but claims the actual text of the lease is equivalent to those words.

We conclude that words other than "right of re-entry" satisfy the letter and public policy of the statute as long as the words employed clearly convey that violation of covenants and agreements in the lease allow the landlord to seek a termination of the lease, the removal of the tenant from the leased premises, and a return of possession of the premises to the landlord. Although the statute is to be strictly construed, the enforcement and protection of the rights bestowed on both parties in the landlord-tenant relationship should not turn on the selection of a set of

"magic words." To be sure, landlord-tenant law is often termed highly technical requiring precise compliance with statutory requirements. *Vander Sterre Bros. Constr., supra,* 284 *N.J.Super.* at 439–40, 665 *A.*2d 779. The precision required by the statute, however, has not been allowed to elevate form over substance. To that end, a notice to cease must explicitly advise the tenant that the activity is offensive, and the tenant must be given a reasonable opportunity to cure the offending behavior. *RWB Newton Assocs. v. Gunn,* 224 *N.J.Super.* 704, 709–10, 541 *A.*2d 280 (App.Div.1988).

Mindful of the nature of the right of re-entry, the language of the lease used by plaintiff satisfies the statutory requirement that the landlord reserve a right of re-entry. Paragraph 13 of the lease contains a list of required and prohibited actions by the tenant. Paragraph 23 of the lease governs termination of the tenancy. It provides that the landlord may terminate the agreement for material non-compliance with the terms of the lease, that the landlord may seek to terminate the lease for cause, and that the tenant must leave the apartment if the landlord demonstrates good cause. Although this language does not use the words "right of re-entry," it advises the tenant in practical and understandable terms the essence of the landlord's right of re-entry. That is, the landlord may terminate the lease and regain possession and control of the premises before the end of the lease term if the tenant violates certain terms, conditions and restrictions in the lease. As such, the language in the lease at issue adequately reserves a right of re-entry and complies with the statutory requirement for evictions for cause. Therefore, the complaint should not have been dismissed.

Having decided that the language in the lease is sufficient to reserve a right of re-entry, we need not decide whether modification of the lease to use the explicit term "right of re-entry" impermissibly conflicts with federal regulations governing leases in federally subsidized housing. We note, however, that the express terms of the HUD Handbook require compliance with state law. Moreover, nothing contained in *N.J.S.A.* 2A:18–

61.1(e)(1) represents an obstacle to accomplishing and executing the goal of Section 8 housing.

Reversed and remanded for further proceedings.