**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5382-18T1

GARDEN SPIRES URBAN
RENEWAL, LP

    Plaintiff-Respondent,

v.

OLIVE YANFORD,

    Defendant-Appellant.

_____

Argued October 22, 2020 – Decided November 5, 2020

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-013235-19.

Jose L. Ortiz argued the cause for appellant (Essex-Newark Legal Services, attorneys; Maria D. Castruita and Jose L. Ortiz, on the briefs).

Matthew A. Sebera argued the cause for respondent (Ehrlich, Petriello, Gudin & Plaza, attorneys; Charles R. Isaacs, on the brief).

PER CURIAM

Defendant Olive Yanford appeals from an August 5, 2019 Special Civil Part order granting a judgment of possession to plaintiff Garden Spires Urban Renewal, LP (Garden Spires), based on defendant's alleged failure to pay rent. Because the record shows plaintiff failed to comply with applicable federal regulations when it increased defendant's rent, we reverse.

I.

Plaintiff is the owner of a residential housing complex in Newark, having purchased the property in August 2018 from First King Properties, LLC (First King), and receives funding from the United States Department of Housing and Urban Development (HUD) under the Section 8 Program. According to defendant, she became a tenant in the housing complex in October 2000, after executing a lease for a subsidized apartment. At the time of the trial court proceedings, defendant lived in the apartment with her daughter and granddaughter.

On May 9, 2019, plaintiff filed a complaint seeking a judgment of possession claiming defendant failed to pay $2150 in monthly rent due for January through May 2019. Defendant moved to dismiss the complaint arguing the court lacked jurisdiction because plaintiff failed to comply with the applicable federal regulations when it terminated defendant's Section 8 rental

subsidy and increased defendant's personal monthly rent obligations on September 1, 2018, from $25 to $2150. On August 5, 2019, the court denied defendant's motion to dismiss the complaint and entered a judgment of possession. This appeal followed.

As the owner of a subsidized housing facility, plaintiff is required to annually reexamine and determine the family income and composition of each tenant receiving Section 8 subsidies. 24 C.F.R. § 5.657(b) (2020). Tenants, for their part, are required to "supply any information requested by the owner or HUD for use in a regularly scheduled reexamination or an interim reexamination of family income and composition in accordance with HUD requirements." Id. at § 5.659(b)(2). HUD regulations require cooperation by a tenant with the landlord by providing information in annual recertification forms.

The policies and procedures governing the recertification process are contained in a handbook published by HUD. See U.S. Dep't of Hous. and Urban Dev., HUD Handbook No. 4350.3 REV-1, Occupancy Requirements of Subsidized Multifamily Housing Programs (2013) (HUD Handbook). "The HUD Handbook 'is a one-source "rule book" on the occupancy policies and procedures governing the subsidized multifamily programs' of HUD." Kuzuri Kijiji, Inc. v. Bryan, 371 N.J. Super. 263, 265 (App. Div. 2004).

A-5382-18T1

All recertifications must be completed prior to the tenant's recertification anniversary date, which is the first day of the month in which a tenant first moved into the property. HUD Handbook at § 7–5(A), (B)(1). Such recertifications are required to ensure "tenants pay rents commensurate with their ability to pay." Id. at § 7–4(A).

Section 7–7A of the HUD Handbook requires owners to provide tenants with four, separate written notices regarding a tenant's responsibility to provide information about "changes in family income or composition necessary to properly complete an annual recertification." The owner must provide an "Initial Notice" each year that "serves to ensure that tenants understand that they will need to report to the property's management office by the specified date the following year to prepare for their next recertification." Id. at § 7–7B.1. "The tenant must sign and date the initial notice to acknowledge receipt; the owner or manager must sign and date the notice as a witness" and "[t]he owner must maintain the notice with original signatures in the tenant's file and provide a copy of the signed notice to the tenant." Id. at § 7–7B.1.b, c.

An owner must then send a tenant three reminder notices. The first must be sent 120 days prior to the tenant's recertification anniversary date to ensure the tenant is advised of "the cutoff date by which the tenant must contact the

owner and provide the information and signatures necessary for the owner to process the recertification." Id. at §§ 7–7B.2.a, 7–7B.2.b(5).

In the event the tenant fails to respond by failing to appear at the property's management office, an owner is thereafter obligated to send a second reminder notice no less than ninety days prior to the annual recertification date. Id. at § 7–7B.3.a. To the extent a tenant remains noncompliant and has not completed the required paperwork for recertification, the owner is required to send a third reminder notice at least sixty days prior to the recertification date. Id. at § 7–7B.4.a.

The sixty-day notice must contain additional information including "the amount of rent the tenant will be required to pay if the tenant fails to provide the required recertification information by the recertification anniversary date and state that this rent increase will be made without additional notice." Id. at § 7–7B.4.b(2). The Handbook obligates an owner to maintain a copy of each of these notices "in the tenant file documenting the date the notice was issued." Id. at §§ 7–7B.2.c; 7–7B.3.c; 7–7B.4.c.

If the owner provides all the required notices and "[t]he tenant reports for the recertification interview on or after the recertification anniversary date[,]" then the "[t]enant is out of compliance." Id. at § 7–8D.3.a(2). Under these

circumstances, the tenant loses his or her federal subsidy and "must begin paying the market rent." Id. at § 7–8D.3.b. A tenant may, however, still apply for recertification and have his or her subsidy reinstated if: "(1) [a]ssistance is available at the property; (2) [t]he tenant submits the required information; and (3) [t]he owner determines that the tenant qualifies for assistance." Id. at § 7–8D.3.c.

Finally, section 7–8D.4 of the HUD Handbook also provides that "[w]hen a tenant fails to provide the required recertification information by the recertification anniversary date, an owner must inquire whether extenuating circumstances prevented the tenant from responding prior to the anniversary date." "Extenuating circumstances" are defined as "circumstances beyond the tenant's control." Id. at § 7–8D.4.a. "Examples of extenuating circumstances include, but are not limited to: (1) [h]ospitalization of the tenant[;] (2) [t]enant out of town for a family emergency (such as the death or severe illness of a close family member) [;] (3) [t]enant on military duty overseas." Ibid.

The parties appear to have conceded at trial that based on defendant's "anniversary date," see § 7–5(A), (B)(1) of the HUD Handbook, she was

required to complete her annual recertification in August 2018.[1] Defendant did not recertify by that date and the reasons for that failure were addressed in the Special Civil Part trial where two of plaintiff's employees testified along with defendant and her daughter.

Rachel Pichardo, plaintiff's acting administrative assistant, testified regarding First King's ownership of the property and plaintiff's compliance with the notice provisions in the HUD Handbook. She described the property at the time of transfer from First King as "practically dilapidated . . . from negligence," with relevant paperwork "literally stuffed in bags [and] in boxes."

Despite having no personal knowledge of First King's attempts to recertify defendant, Pichardo stated that First King sent defendant recertification notices on May 1, June 1, and July 1, 2018.[2] Pichardo, who repeatedly characterized

---

[1] We were not able to independently confirm defendant's anniversary date or recertification date, as a copy of the applicable lease was neither marked for identification at trial nor moved into evidence and is not contained in the record on appeal. A "resident ledger," however, indicates that defendant's lease incepted in September 2000 and on appeal defendant represents that she moved into her apartment in October 2000. As our decision does not turn on whether defendant's anniversary date for recertification was in August, September, or October, we accept for purposes of our opinion that defendant's recertification was required to be completed in August 2018.

[2] Plaintiff's counsel represented to the court that because his client purchased the property in August 2018, he could not "speak to [the] prior recertifications."

A-5382-18T1

defendant's subsidized rent as a "gift," stated that plaintiff also sent out notices to defendant, although she failed to identify when such notices were sent or the contents of any letter.[3]  Pichardo also stated that despite attempts to contact defendant as early as October, plaintiff's representatives first met with defendant in November 2018, to begin the recertification process.  Ultimately, the court deemed the notices sent by First King inadmissible because the individual who allegedly sent the notices was not called as a witness and the court was therefore unable to conclude that First King sent the notices or that defendant received them.

Katerra Fields, plaintiff's office manager responsible for the Section 8 recertification process, testified regarding plaintiff's attempts to recertify defendant.  She stated that she first met defendant in late-October or early-November 2018, when defendant walked into her office and placed a letter advising she was going on vacation "down on the table, and walked right out the

---

[3] Despite Pichardo's testimony, the only two documents in the record on appeal that address plaintiff's, as opposed to First King's, written communication regarding the recertification process are a January 16, 2020 "notice to cease/comply" which "request[ed] . . . [defendant] . . . come in for an initial certification on January 13, 2020 at 11:00 [a.m.] to obtain a subsidy, which is required to live in this property."  The letter further advised that any failure to comply would support "good cause" to terminate the lease.  Also contained in the appellate appendix is a January 31, 2020 "notice to quit and demand for possession."

door." Fields stated she thereafter attempted to contact defendant by phone regarding the recertification process but "did not receive any answer from her."

According to Fields, defendant returned to her office with her daughters, who were then also residing in the apartment, on November 20, 2018. Fields stated that she asked defendant to provide records necessary for the recertification process including defendant's pay stubs. She explained that she attempted to contact defendant's employer as defendant submitted non-consecutive weekly paystubs. Pichardo testified that defendant's daughters also submitted non-consecutive pay stubs.

Fields stated that because defendant's recertification was long overdue, she advised her that plaintiff would extend its deadline for defendant to provide all outstanding documentation until the next day. Defendant met with Fields approximately one week later and provided a letter indicating she wanted to remove her adult children from the lease. Fields advised defendant that in order to effectuate her request, defendant was required to provide information to establish their current residence and formally amend the lease.

According to Fields, defendant never provided the outstanding information. Fields confirmed, however, that she did not inquire if there were extenuating circumstances explaining defendant's failure. Fields also stated that

she did not send any written notices to defendant regarding the recertification process but orally advised defendant that her subsidy was terminated.

At the conclusion of Fields' testimony, the court again noted that plaintiff failed to present a witness from First King regarding the recertification notices. The court also stated that at the time of the ownership transfer in August 2018, plaintiff had "ample time to give [defendant] notice that [defendant] needed to come up with paperwork to be recertified," and it was "totally inappropriate" to require defendant to "[c]ome back tomorrow and have all your paperwork ready in one day."

Having failed to present a competent witness to testify as to proper service of any of the four required notices, which the court called the "crux" of the case, the court granted plaintiff's counsel's request for an adjournment to subpoena a representative of First King, and for plaintiff "to convince HUD to . . . recertify" defendant. As to the lack of proofs regarding compliance with the recertification notice provisions, the court found, "there [was] a total lack on the part of the landlord of sending out and following up on proper notices . . . ."

The parties returned to court on July 12 and August 5, 2019, after unsuccessfully attempting to resolve the matter. At the August 5, 2019 proceeding, plaintiff's counsel addressed the recertification issue by informing

the court that "a good chunk . . . of the prior company's management did stay on . . . during the transition" and he was prepared to present a witness, Patricia Stewart, who "personally delivered [the notices] on [defendant's] door as they [did] every other year." Despite counsel's proffer, neither Stewart nor any other representative from First King appeared at trial.

Defendant testified that she successfully recertified in each of the prior nineteen years without incident. And, contrary to Fields' testimony, defendant's daughter stated that she went with her mother to plaintiff's office "many times" in October. Defendant also testified that she provided all requested information including all her pay stubs and was told "everything is finished" but then plaintiff's representatives kept "asking me for the same thing over, and over." Plaintiff accepted defendant's subsidized rent in September, October, and November 2018 but refused to accept her rent thereafter due to her failure to recertify.

At the conclusion of trial, the court entered the August 5, 2019 order under review which granted plaintiff possession of defendant's apartment unless defendant paid $8600 representing a portion of the outstanding market rate rent for the unit. In the court's oral opinion issued that day, the court effectively denied defendant's motion to dismiss the complaint and found that the "[p]rior

11

owner sent notices that there was going to be a recertification." According to the court, that recertification began in November 2018, when defendant was advised to bring "four to six pay stubs because someone worked in the apartment."

The court also concluded that there were no extenuating circumstances that would excuse defendant's noncompliance with the recertification process. The court explained that although defendant had recertified consistently for nineteen years, it described her attempts at compliance and to obtain rental assistance after November 2018, as "insufficient." The court also characterized the circumstances presented as "problematic" and recognized that although the "transfer in ownership . . . [may] provide[] some gap in the certification process," it was "hesitant to say that [defendant] is completely off the hook here because . . . [defendant failed to make] an adequate effort to re-comply."

The court stayed its order for twenty days to permit defendant to file a notice of appeal. After defendant perfected her appeal, plaintiff filed a warrant for removal and defendant was subsequently locked out of her apartment. Shortly thereafter, the court granted defendant's emergent application to vacate the warrant of removal and stayed further trial court proceedings.

A-5382-18T1

## II.

Defendant claims she could not be evicted because the court lacked jurisdiction to resolve the dispute as plaintiff failed to establish that it served the required federal recertification notices and failed to take "steps to timely recertify defendant." We agree, in part, and reverse because the record fails to contain competent evidence that plaintiff, or First King, properly notified defendant of the recertification process in accordance with the HUD Handbook.

A party seeking to overturn a judgment of possession must demonstrate on appeal that the judge abused his or her discretion in entering the judgment. Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998). We will not disturb the factual findings of the trial judge unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Klump v. Borough of Avalon, 202 N.J. 390, 412 (2010) (quoting Abtrax Pharm. v. Elkins–Sinn, Inc., 139 N.J. 499, 517 (1995)). We review a trial court's conclusions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 379 (1995).

As previously noted, "[u]nder federal law, an owner landlord is required to satisfy specific requirements when attempting to terminate a subsidized tenancy. We have held federal requirements to be jurisdictional prerequisites to

the establishment of good cause for eviction in state court." Riverview Towers Assocs. v. Jones, 358 N.J. Super. 85, 88 (App. Div. 2003). Further, in Housing Authority of the City of Newark v. Raindrop, 287 N.J. Super. 222, 231 (App. Div. 1996), we concluded that a landlord's failure to follow federal notice requirements for the termination of a lease could not be regarded as "technical noncompliance" but instead "denied the trial court jurisdiction." See also Winns v. Rosado, 440 N.J. Super. 98, 106 (Law Div. 2014) (finding plaintiff's failure to provide notice of the action to the Department of Community Affairs as required under federal regulations deprived the court of jurisdiction over plaintiff's complaint for judgment of possession).

Here, the trial record failed to establish plaintiff served the initial and the three recertification reminder notices upon defendant. After correctly concluding that plaintiff's representative could not testify as to the service and the contents of notices purportedly sent by First King to which she had no personal knowledge, the court later found in summary fashion that the notices were, in fact sent, without explaining the factual basis for that conclusion.

At trial, plaintiff offered only Pichardo's testimony to establish satisfaction of the notice requirements. Pichardo, however, did not send out the notices, a representative of First King allegedly did. In addition, Pichardo did

14

not testify to possessing any independent knowledge that defendant was served properly with any of the four notices or what was contained in those letters, which are clearly hearsay.  See N.J.R.E. 801(c).[4]

Further, a proper foundation was not laid to establish the documents as business records of defendant or First King under N.J.R.E. 803(c)(6) nor was defendant confronted with the notices on cross-examination.  We also note that despite counsel's request to adjourn the June 13, 2019 hearing to subpoena a representative of First King, and his subsequent proffer regarding the scope of Stewart's testimony, she never testified at trial.  In sum, based on the trial record, Pichardo was not competent to provide testimony regarding service and the content of any notices sent by First King and there was no other evidentiary basis for the court on the trial record to consider the substance of those notices or conclude they were actually sent by First King and received by defendant.

Plaintiff contends that under N.J.R.E. 301, it was discharged from providing proof that First King properly served the four notices because defendant conceded that she contacted a First King representative in August

---

[4]  The notices were not attached to the complaint for possession as required by Rule 6:3-4(d).  In addition, although the court briefly reviewed the notices purportedly sent by First King, they were not marked for identification and are not part of the appellate record.

A-5382-18T1

prior to the sale of the property to commence the recertification process. As best we can discern from plaintiff's argument, it concludes that this "fact" establishes a presumption that First King served the four recertification notices in compliance with the HUD Handbook. It further maintains that N.J.R.E. 611 provides support for the court's factual findings. We disagree with both contentions.

N.J.R.E. 301 permits a presumption discharging a party's burden of producing evidence of a fact only if "no evidence tending to disprove the presumed fact is presented" or "the evidence is such that reasonable persons would not differ" as to the existence or nonexistence of the presumed fact. N.J.R.E. 301(b), (c). Even assuming defendant had preliminary discussions with First King representatives in August, that "fact" does not establish that First King previously effectuated proper service of the four required notices, the contents of those letters, and plaintiff's compliance with the remaining procedures in the HUD Handbook. Nor does the court's ability under N.J.R.E. 611(a) to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," excuse plaintiff from establishing actual service of each notice consistent with the HUD Handbook.

16

Further, plaintiff's compliance with the notice provisions in the HUD Handbook was not excused, as the court seemingly concluded, because defendant purportedly failed to participate to plaintiff's satisfaction in the "recertification" process commencing in November. The procedures set forth in the HUD Handbook are clear and straightforward and are detailed to protect the significant property right a tenant possesses to a Section 8 subsidized housing voucher, and the federal government's concomitant interests in ensuring an accurate and equitable distribution of those benefits. These procedures require a clear record that a landlord properly notified a tenant and memorialized those interactions. Proper notification and compliance are not satisfied by a post-hoc oral recertification process.

We would be remiss if we did not note that defendant lived in her subsidized unit for nearly twenty years without any difficulty in recertifying, prior to the change in ownership in August 2018. We disagree with any suggestion that defendant's successful prior history with the recertification process somehow inculpated her with respect to the loss of her certification and excused, based on the competent evidence at trial, plaintiff's and First King's non-compliance with the HUD Handbook.

A-5382-18T1

In light of our decision that the record failed to establish plaintiff's compliance with the provisions of the HUD handbook, we need not address defendant's alternative argument that plaintiff failed to consider appropriately the extenuating circumstances excusing compliance with the recertification process. See HUD Handbook, § 7–8D.4.a.

Accordingly, we reverse and vacate the judgment of possession. Defendant shall promptly submit, and plaintiff shall properly consider, an application for recertification. To the extent we have not specifically addressed any of plaintiff's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5382-18T1