**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1724-19T3

THE VILLAGE APARTMENTS,

     Plaintiff-Respondent,

v.

DAVID MACALL,

     Defendant-Appellant.

_____

> Argued September 21, 2020 – Decided December 30, 2020
>
> Before Judges Mayer and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. LT-008654-19.
>
> David Macall, appellant, argued the cause pro se.
>
> David A. Capozzi argued the cause for respondent.

PER CURIAM

     This appeal arises from a residential landlord-tenant dispute over whether plaintiff, Village Apartments, properly raised its tenant's rent by $35 per month.

The tenant in question, defendant David Macall, appeals from an order[1] granting judgment of possession in favor of the landlord for nonpayment of rent pursuant to N.J.S.A. 2A:18-61.1(f). Macall remitted the unpaid rent the same day and retained possession of the apartment. After carefully considering the record in light of the applicable legal principles and arguments of the parties, we remand this matter to the trial court to determine whether Village Apartments properly effectuated service of the notice to quit. In all other respects, we affirm the trial court's order.

I.

We presume the parties are familiar with the circumstances leading to this appeal. We therefore only briefly recount those facts relevant to the issues before us. Macall has been a residential tenant since March 2006. In each of the three years preceding this litigation, Village Apartments sent Macall notices of rent increases. Specifically, in December 2016, Village Apartments sent Macall a document captioned "Notice to Quit and Offer of New Tenancy." That notice provided that "Effective 03/01/2017 and extending through 02/28/2018

---

[1] Notwithstanding that the order was signed and dated November 25, 2019, the record indicates that the trial court issued its decision on the date of trial, November 14, 2019.

the new rental amount shall be in the amount of $1090.00 per month." Macall signed and returned the December 2016 notice.

In December 2017, Village Apartments sent Macall an almost identical document also captioned "Notice to Quit and Offer of New Tenancy." This second notice provided that, "Effective 03/01/2018 and extending through 02/28/2019 the new rental amount shall be in the amount of $1120.00 per month." That represented a 2.75 % increase in rent. This time, Macall did not execute the December 2017 document. However, he remained in possession of the property and paid the increased rent.

On December 13, 2018, Village Apartments sent Macall another nearly identical document, this time captioned "Lease Renewal 03/01/2019 – 02/29/2020."[2] This third document in the series of annual notices lies at the heart of the present dispute. Using the same language as in the previous two notices, the December 2018 document stated, "Your present lease expires on

---

[2] As we discuss in Section II, infra, Macall for the first time on appeal disputes the method by which plaintiff sent him the December 2018 document. So far as we can tell, Macall maintains that this document was made available to him only through his use of an internet application. Although it is not disputed that Macall read the document and decided not to pay the rent increase, neither Macall's brief nor the record before us explain how he was alerted that the December 2018 document had been issued or what steps were needed for him to access and read it.

02/28/2019. Effective 03/01/2019 and extending through 02/29/2020 the new rental amount shall be in the amount of $1155.00 per month." That represented a 3.13% rate increase. Additionally, like the notices sent in 2016 and 2017, the December 2018 document stated: "Please note that your lease renews AUTOMATICALLY for the renewal terms above, unless written notice to vacate is received at the Leasing Office by: 12/31/2018."

Macall did not sign and return the December 2018 notice. This time, he remained in possession of the property but did not pay the increased rent. Rather, he continued to pay monthly rent at the rate fixed in the December 2017 notice. That prompted Village Apartments to initiate a summary dispossess action based on non-payment of rent. The sole remedy sought in the complaint was possession of the property.

After a hearing, the trial court concluded that the December 2018 document was a valid notice to quit and created a new tenancy at the increased rent amount. The court reasoned that by holding over, Macall had created a new tenancy and therefore was obligated either to pay the increased rent or vacate the premises. The court thereupon granted judgment of possession to Village Apartments for nonpayment of rent pursuant to N.J.SA. 2A:18-61.1(f). That same day, in order to prevent issuance of a warrant of eviction, Macall paid the

arrearages outstanding for seven months based on the $35 per month rent increase. He continues to occupy the leased premises.

## II.

We first address Macall's contention that Village Apartments did not properly serve the notice to quit. Macall claims that he was provided access to this notice only through "an unsecure internet app," and that Village Apartments failed to serve the notice in accordance with N.J.S.A. 2A:18-61.2, which requires service either in person, upon a household family member, or through regular and certified mail.[3] Village Apartments failed to respond substantively to this point on appeal, arguing only that Macall waived this argument by failing to raise it to the trial court, and that we should decline to consider it. Although Macall did not raise this matter at trial, the issue of defective service speaks directly to the jurisdiction of the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (holding an appellate court may decline to address an issue not raised to the trial court "unless the questions so raised on appeal go to the jurisdiction of the trial court[.]") (quoting Reynolds Offset Co., Inc. v.

---

[3] N.J.S.A. 2A:18-61.2 provides in pertinent part that notice, "shall be served either personally upon the tenant or lessee or such person in possession by giving him a copy thereof, or by leaving a copy thereof at his usual place of abode with some member of his family above the age of 14 years, or by certified mail; if the certified letter is not claimed, notice shall be sent by regular mail."

A-1724-19T3

Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). We therefore address Macall's claim that the notice to quit was not properly served.

The Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, "reflects a public policy barring dispossess actions except upon strict compliance with the notice and procedural requirements of the Act." 224 Jefferson St. Condo. Ass'n v. Paige, 346 N.J. Super. 379, 383 (App. Div. 2002). This strict or "punctilious compliance" applies to all provisions in the Act, even in instances where the landlord acts in good faith or the tenant suffers no appreciable prejudice. Ibid. (citing Weise v. Dover Gen. Hosp., 257 N.J. Super. 499, 504 (App. Div. 1992)). Accordingly, we have recognized that "the statute leaves no latitude for a judicial construction which excuses failure to give the specified notice." Vander Sterre Bros. Constr. v. Keating, 284 N.J. Super. 433, 438 (App. Div. 1995). "Absent strict compliance with the requirements of the Act, a court is without jurisdiction to entertain a summary dispossession action." Id. at 440 (quoting Bayside Condos., Inc. v. Mahoney, 254 N.J. Super. 323, 325 (App. Div. 1992)).

Because the issue of proper service of the notice to quit was raised for the first time on appeal, the trial court made no findings on the matter. Macall's argument that service of the notice to quit was delivered only through some form of internet application is neither supported by corroborating evidence on record

nor denied by Village Apartments in its responsive brief. Given the scant evidence on record addressing the issue, we decline to exercise our original factfinding authority. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (holding that "our 'original factfinding authority must be exercised only with great frugality and in none but a clear case free of doubt.'") (quoting Tomaino v. Burman, 364 N.J. Super. 224, 234–35 (App. Div. 2003)). Accordingly, we are constrained to remand this case to the trial court to make findings and determine whether the notice to quit was properly served in accordance with N.J.S.A. 2A:18-61.2

III.

Although we remand to the trial court to determine the issue of compliance with the statutory service requirement, in the interest of according finality to this appeal, we nonetheless address Macall's other contentions to the extent that they merit discussion.

Macall contends the trial court erred by inferring that Macall entered an implied agreement to waive the protective requirements of the Anti-Eviction Act. Macall's argument misconstrues the governing case law. In Harry's Village, Inc. v. Egg Harbor Twp., 89 N.J. 576 (1982), our Supreme Court held that "[w]hen a landlord gives a proper notice to quit and a notice of rent increase,

7

a tenant, by holding over, creates a new tenancy at the increased rental." Id. at 583 (citing Stamboulos v. McKee, 134 N.J. Super. 567, 571 (App. Div. 1975)). In the case before us, the trial court properly determined that Macall remained in possession of the property after receiving a valid notice to quit, thereby consenting to the rental increase.

Macall next contends that a three-month notice period is required for a notice to quit.[4] We disagree. The law requires a one-month notice period in these circumstances. See Harrison Assocs. v. Rent Leveling Bd. of Franklin Twp., Somerset Cnty., 215 N.J. Super. 1, 3, 6-7 (App. Div. 1986) (holding the one-month notice requirement for a notice to quit prescribed in N.J.S.A. 2A:18-61.2(e) also applies to a notice of rental increase under N.J.S.A. 2A:18-61.1(f)). Even if we applied a three-month notice period, Macall cannot prevail as he received notice of the rental increase in December 2018. Village Apartments

---

[4] Macall appears to rely on N.J.S.A. 2A:18-56, which is not part of the Anti-Eviction Act and does not apply to the circumstances presented in this case. That statute reads in relevant part, "No judgment for possession in cases specified in [N.J.S.A. 2A:18-53(a)] shall be ordered unless: (a) [t]he tenancy, if a tenancy at will or from year to year, has been terminated by the giving of [three] months' notice to quit . . . ." N.J.S.A. 2A:18-56. However, N.J.S.A. 2A:18-53 explains that this statutory framework applies "[e]xcept for residential lessees and tenants included in section [two] of this act," which refers to the Anti-Eviction Act at N.J.S.A. 2A:18-61.1.

did not initiate the summary dispossess action until ten months later in October 2019.

Macall also claims the December 2018 document was not a valid notice to quit. We agree with the trial court's determination that the substance of the document met all legal requirements. The notice stated the reason for termination (the end of the lease period), indicated the parties were in a landlord-tenant relationship, stated the premises were to be vacated by a certain date, and informed Macall that his right to possession would terminate on that date. See Harry's Village, 89 N.J. at 585. We therefore see no reason to disturb the trial court's conclusion that the December 2018 document was a valid notice to quit, notwithstanding it was not captioned as such.

We next address Macall's contention that the trial court erred by denying his motion to remove the case to the Law Division. Macall argues this case presents important legal issues. He also alleges that Village Apartments brought the summary disposition action against him as "retaliation for [his] assertion of legal rights in connection with the most recent renewal." Macall contends this entitles him to a jury trial. There is no evidence in the record, however, to support Macall's retaliation claim.

We believe this matter was properly heard in the Special Civil Part. N.J.S.A. 2A:18-60 provides:

> At any time before an action for the removal of a tenant comes on for trial, either the landlord or person in possession may apply to the Superior Court, which may, if it deems it of sufficient importance, order the cause transferred from the Special Civil Part to the Law Division.

Furthermore,

> In general, a motion for transfer should be granted whenever the procedural limitations of a summary action (other than the unavailability of a jury trial) would significantly prejudice substantial interests either of the litigants or of the judicial system itself, and, because of the particular facts and circumstances of a specific case, those prejudicial effects would outweigh the prejudice that would result from any delay caused by the transfer.
>
> [Twp. of Bloomfield v. Rosanna's Figure Salon, Inc., 253 N.J. Super. 551, 563 (App. Div. 1992).]

An application to transfer a tenancy proceeding is within the discretion of the trial court. Master Auto Parts, Inc. v. M. & M. Shoes, Inc., 105 N.J. Super. 49, 53 (App. Div. 1969) (citing Carteret Properties v. Variety Donuts, Inc., 49 N.J. Super. 116, 130 (1967)). In Twp. of Bloomfield, we identified five factors to channel the exercise of that discretion. 253 N.J. Super. at 562–63. Of those five factors, only one is applicable here: "[t]he complexity of the issues

presented, where discovery or other pretrial procedures are necessary or appropriate[.]" Id. at 562.[5]

In Lopez v. Medina, the Law Division addressed the transfer of a summary dispossess action from landlord-tenant court. 262 N.J. Super. 112 (Law Div. 1992). In that case, the landlord alleged non-payment of rent and failure to surrender the premises after a notice terminating the tenancy. Id. at 115. The court concluded that "summary dispossess actions are simple, and failure to transfer them to and consolidate them in the Law Division will not prejudice the parties nor produce an unjust result." Id. at 122. In reaching that conclusion, the court aptly recognized, "[s]ummary dispossess actions in the Special Civil

---

[5] The remaining factors are:

"[t]he presence of multiple actions for possession arising out of the same transaction or series of transactions, such as where the dispossesses are based upon a concerted action by the tenants involved; [t]he appropriateness of class relief; [t]he need for uniformity of result, such as where separate proceedings are simultaneously pending in both the Superior Court and the County District Court arising from the same transaction or set of facts, and [t]he necessity of joining additional parties or claims in order to reach a final result."

[Id. at 562-63 (citing Morrocco v. Felton, 112 N.J. Super. 226, 235–36 (Law Div. 1992)).]

Part are statutory proceedings intended to accord landlords an expeditious, inexpensive, uncomplicated and effective means of repossessing leased premises, thereby avoiding delays inherent in common law ejectment actions." Ibid.

In the case before us, as in Lopez, the substantive issues are not complex and do not require pretrial discovery. By any objective measure, this case is a routine action for non-payment of rent brought under N.J.S.A. 2A:18-61.1(f). It is entirely appropriate that such disputes be heard by judges with experience and expertise in resolving landlord-tenant controversies. Transferring such matters to the Law Division could deny a landlord duly owed rent and possession of the premises for a prolonged period. Macall, moreover, has suffered no prejudice by having this dispute heard in the Special Civil Part. See Twp. of Bloomfield, 253 N.J. Super. at 563 (explicitly recognizing that "unavailability of a jury trial" is not a procedural limitation that would significantly prejudice the substantial interests of a litigant).

IV.

In sum, we affirm the trial court's determinations as to all of the issues that were raised at trial, and remand only for the trial court to determine whether the notice to quit was properly served in accordance with N.J.S.A. 2A:18-61.2.

We leave to the discretion of the trial court whether to require submission of certifications, affidavits, or other documents, or convene an evidentiary hearing to resolve factual disputes. If the trial court determines that the notice to quit was not properly served, it shall dismiss the complaint for summary dispossession without prejudice. As noted, in all other respects, we affirm the order granting judgment of possession to Village Apartments for nonpayment of rent.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION